JOHN D. BUCHANAN, State Bar No. 119584
John.buchanan@sce.com
TANYA A. GUZMAN, State Bar No. 252256
Tanya.guzman@sce.com
SOUTHERN CALIFORNIA EDISON COMPANY
2244 Walnut Grove Avenue, Suite 360
Rosemead, CA 91770
Tel: (626) 302-6674
Fax: (626) 302-1910
Attorneys for SOUTHERN CALIFORNIA EDISON COMPANY

***UNITED STATES DISTRICT COURT***

***CENTRAL DISTRICT OF CALIFORNIA***

ROBIN HILLEMANN, an individual,

Plaintiff,

v.

SOUTHERN CALIFORNIA EDISON COMPANY, a California corporation, and DOES 1 to 10, inclusive,

Defendant.

Case No. CV11-4467-R
*Honorable Manuel L. Real*

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF JUDGMENT GRANTING DEFENDANT SOUTHERN CALIFORNIA EDISON COMPANY'S MOTION FOR SUMMARY JUDGEMENT**

Date: March 5, 2012
Time: 10:00 a.m.
Room: 8

Action Filed: April 19, 2011
Trial Date: April 3, 2012

## I. UNCONTROVERTED FACTS

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
| --- | --- |
| 1. Plaintiff began working for SCE as a Time Data Maintainer ("TDM") (also known as a Station Accounting Clerk) at SCE's San Onofre Nuclear Generating Station ("SONGS") on August 17, 2009. | Guzman Dec. Exhibit D; Hillemann Dep., 6:25-7:12, attached as Exhibit B to Guzman Dec. |
| 2. Plaintiff's position with SCE was a temporary work assignment scheduled to end on January 31, 2010. | Hillemann Dep., 13:21-23; 14:5-11, attached as Exhibit B to Guzman Dec. |
| 3. As a TDM, Plaintiff was responsible for copying time data entries and pasting the information in SCE's internal spreadsheet. | Hillemann Dep., 7:13-8:10, attached as Exhibit B to Guzman Dec. |
| 4. Plaintiff was diagnosed with Cardiomyopathy, a heart condition, in early 2009, before she began her employment at SCE. | Hillemann Dep., 17:24-18:14, attached as Exhibit B to Guzman Dec. |
| 5. While in TDM training, Plaintiff did not require any accommodation for her medical condition. | Hillemann Dep., 17:7-15, 86:8-12, attached as Exhibit B to Guzman Dec. |

| | |
|---|---|
| 6. Plaintiff informed her direct supervisor, Allison James, that walking up the hill between the K-building, her first work location, and the parking lot shuttle stop would create difficulty for Plaintiff because of her medical condition. | Hillemann Dep., 28:16-29:10, 30:6-14, attached as Exhibit B to Guzman Dec. |
| 7. On the two days Plaintiff was assigned to work in the K-building, Plaintiff was driven up the hill from the K-building in a golf cart. | Hillemann Dep., 36:20-37:15, attached as Exhibit B to Guzman Dec. |
| 8. Plaintiff was never required to walk up the hill of stairs from the K-building to the parking lot shuttle stop. | Hillemann Dep., 55:11-13, attached as Exhibit B to Guzman Dec. |
| 9. Plaintiff never requested any accommodation regarding parking when she mentioned her concern regarding the hill near the K-building. | Hillemann Dep., 111:20-23, attached as Exhibit B to Guzman Dec. |
| 10. On September 16, 2009, Plaintiff was transported to the SONGS first aid facility, and then to Mission Hospital, due to symptoms related to her medical condition. | Guzman Dec. Exhibit C; Hillemann Dep., 44:23-45:17, attached as Exhibit B to Guzman Dec. |

| | |
|---|---|
| 11. Plaintiff was released from Mission Hospital on September 16, 2009**,** and returned to work on or about September 22, 2009. | Guzman Dec. Exhibits C & E; Hillemann Dep., 86:19-24, attached as Exhibit B to Guzman Dec. |
| 12. Plaintiff was not required to report back to the K-building after September 16, 2009. | Hillemann Dep., 55:5-10, attached as Exhibit B to Guzman Dec. |
| 13. Upon Plaintiff's return to work, she temporarily was reassigned from the K-building to the location of the NBA-department, where she worked for approximately two weeks. | Hillemann Dep., 69:8-14, 24-25, attached as Exhibit B to Guzman Dec. |
| 14. On or about September 22, 2009, Plaintiff was notified that she would be transferred to a new permanent work location, the N-building. | Guzman Dec. Exhibit E. |
| 15. Plaintiff was happy with the change in work location to the N-building and her job duties remained the same at the new location. | Guzman Dec. Exhibit E; Hillemann Dep., 74:2-7, attached as Exhibit B to Guzman Dec. |
| 16. Neither the location of the NBA-department or the N-building required a steep or uphill walk to | Conklin Dec. ¶¶ 3-4. |

| | |
|---|---|
| the parking lot shuttle stop. | |
| 17. After she was notified of her change in work location to the N-building, Plaintiff demanded that she immediately be permitted to park in the parking spaces near the N-building. | Guzman Dec. Exhibit E. |
| 18. From September to November 2009, only handicap parking and service-vehicle parking were located near the N-building, and there was no space for other specially-designated parking that did not include travel up a steep incline. | Conklin Dec. ¶ 5. |
| 19. SCE management notified Plaintiff that she would be eligible to park in one of the handicap parking spaces near the N-building if she received a valid handicap placard. | Hillemann Dep., 79:25-80:4, attached as Exhibit B to Guzman Dec. |
| 20. At no time during her employment did Plaintiff present SCE with a valid handicap placard. | Hillemann Dep., 82:12-18, attached as Exhibit B to Guzman Dec. |
| 21. On October 18, 2009, Plaintiff emailed Ms. James to request a | Guzman Dec. Exhibit F. |

| | |
|---|---|
| change in her work schedule because Plaintiff was feeling fatigued by her current schedule. | |
| 22. Ms. James agreed to change Plaintiff's work schedule from 6 days/week and 10 hours/day, to 5 days/week and 8 hours/day. | Hillemann Dep., 11:17-22, 147:21-148:4, attached as Exhibit B to Guzman Dec. |
| 23. Ms. James also agreed to change Plaintiff's work schedule so that Plaintiff could have Mondays off to attend her doctor appointments. | Guzman Dec. Exhibit G; Hillemann Dep., 122:22-123:3, attached as Exhibit B to Guzman Dec. |
| 24. Plaintiff does not contest any feedback or criticism she received regarding her work performance. | Hillemann Dep., 144:20-145:2, 183:23-184:8, attached as Exhibit B to Guzman Dec. |

| | |
|---|---|
| 25. Plaintiff admitted that Ms. James had accommodated the restrictions caused by her medical condition in two emails. | Guzman Dec. Exhibits E and G. |
| 26. Plaintiff admits that SCE accommodated her medical condition by permitting her to use a golf cart to travel up the hill from the K-building, transferring her to the N-building, decreasing the hours and days she worked each week so Plaintiff would feel less fatigued, and permitting Plaintiff to have Mondays off so she could attend doctor appointments. | Hillemann Dep., 112:11-16, 179:16-180:4, attached as Exhibit B to Guzman Dec. |
| 27. On November 28, 2009, Plaintiff began disability leave and received extended disability benefits from SCE until November 2010. | Guzman Dec. Exhibit H; Hillemann Dep., 167:4-19, 180:16-25, attached as Exhibit B to Guzman Dec. |
| 28. While Plaintiff was on disability leave, Ms. James called Plaintiff to invite her to interview for a permanent position with SCE. | Hillemann Dep., 161:12-22, attached as Exhibit B to Guzman Dec. |
| 29. Plaintiff declined to interview with SCE for a permanent position. | Hillemann Dep., 164:4-6, attached as Exhibit B to Guzman Dec. |

## II. **CONCLUSIONS OF LAW**.

1. The Americans with Disabilities Act ("ADA") does not require an employer to grant an employee's accommodation of choice. An employer need only make an accommodation which allows the employee to complete the essential functions of her job. 29 C.F.R. § 1630.2(o) (2011); Cripe v. City of San Jose, 261 F.3d 877, 889 (9th Cir. 2001).

2. An employer may ask an employee for verification that the requested accommodation is necessary. 29 C.F.R. Pt. 1630, App. § 1630.9 (2011); Allen v. Pacific Bell, 348 F.3d 1113, 1115 (9th Cir. 2003).

3. An employee's failure to provide her employer with the requested information regarding her desired accommodation results in the breakdown of the interactive process. Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996).

4. An employer is not liable for failure to provide a reasonable accommodation when the employee is responsible for the breakdown in the interactive process regarding that accommodation. Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996).

5. A cause of action for harassment based on a hostile work environment under the ADA is not a claim recognized by the Ninth Circuit. Brown v. City of Tucson, 336 F.3d 1181, 1190 (9th Cir. 2003); Fowler v. Potter, No. C 06-04716, 2008 WL 2383073, at *9 (N.D. Cal. June 9, 2008).

6. Harassment based on a hostile work environment requires evidence of conduct so severe or pervasive that it was objectively hostile, and that the conduct affected the terms, conditions or privileges of employment. Fox v. General Motors Corp., 247 F.3d 169, 178 (4th Cir. 2001); Shaver v. Independent Stave Co., 350 F.3d 716, 720 (8th Cir. 2003).

7. Isolated instances of conduct that are rude or insensitive do not create a hostile work environment under the ADA. Shaver v. Independent Stave Co., 350 F.3d 716, 720 (8th Cir. 2003).

8. A claim for retaliation under the ADA, requires that the employee engaged in a protected activity, suffered an adverse employment action, and that a causal link existed between the protected activity and the adverse employment action. Pardi v. Kaiser Found. Hospitals, 389 F.3d 840, 849 (9th Cir. 2004).

9. An actionable adverse employment action must deter other employees from engaging in protected activity. Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000).

10. An employee bears the burden of proving that SCE failed to provide her with a certain reasonable accommodation that was available. Memmer v. Marin County Cts., 169 F.3d 630, 633 (9th Cir. 1999).

11. Liability for failure to engage in the interactive process requires a showing that the employer did not participate in the interactive process in good faith. Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001).

12. An employee has a duty to participate in the interactive process in good faith. Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001).

DATED: _March 27, 2012_

Honorable Manuel L. Real
Judge of the United States
District Court